

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00039-CR

James **FERNANDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 12716-CR
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 31, 2014

AFFIRMED

A jury convicted James Fernandez of the offense of theft by a public servant in the amount

of $50 or more but less than $500. On appeal, Fernandez argues the evidence was insufficient to

support his conviction. We affirm.

### BACKGROUND

Fernandez was the Justice of the Peace for Precinct 4 in Val Verde County, Texas.

Fernandez planned to attend a conference for elected officials in Orlando, Florida from June 20 to

June 24, 2012. Fernandez's attendance at the conference was approved county business.

In February 2012, Fernandez asked the chief deputy clerk of the court, Veronica Mojica, to make travel arrangements for him to attend the conference. Mojica bought tickets on Southwest Airlines for Fernandez to travel to and from the conference. To pay for the tickets, which cost $381.60, Mojica used a county credit card issued to Fernandez. County policy prefers the purchase of nonrefundable/nontransferable airline tickets because they generally cost less than refundable tickets. Therefore, the tickets purchased by Mojica were nonrefundable/nontransferable. Documentation was submitted to the county auditor in support of this purchase.

Months later, Fernandez decided he would not attend the conference due in part to illness. He instructed Mojica to cancel his flight reservations. Mojica cancelled the reservations on June 11, 2012. In accordance with its policy, Southwest Airlines did not refund the tickets, but did issue a credit for use in a future purchase. The credit could not be redeemed by anyone except Fernandez. If not used, the credit would expire on February 5, 2013. However, if the county paid a nominal fee, the credit could have been extended for an additional year.

On August 8, 2012, Fernandez called Mojica to ask her for the reservation number for the cancelled San Antonio-Orlando airline tickets. Mojica located the reservation number and, at Fernandez's direction, provided it to Fernandez's adult son. Fernandez's son booked flights for his father from San Antonio to Phoenix and back using the $381.60 credit from the cancelled San Antonio-Orlando flights. The new tickets cost more than the San Antonio-Orlando flights, and the additional amount was paid with Fernandez's personal credit card. On August 8, 2012, Fernandez traveled on the flight from San Antonio to Phoenix. The trip was for personal reasons, not for county business. Fernandez did not seek approval from any county official to use the credit.

Shortly thereafter, the county auditor, Frank Lowe, noticed that the County's travel expenses were approaching its budget limit. Lowe was aware that Fernandez had cancelled his airline tickets for the Orlando trip. Lowe directed a member of his staff to contact Southwest

Airlines and ask if it would make an exception and refund the cancelled tickets. The staff member contacted Southwest Airlines and learned that the credit from Fernandez's cancellation had been used. Lowe then obtained from Southwest Airlines documentation showing Fernandez's reservation history and the use of the credit for flights from San Antonio to Phoenix and back. The county auditor's office had received supporting documentation for Fernandez's San Antonio-Orlando trip but had not received such documentation for Fernandez's San Antonio-Phoenix trip.

On August 20, 2012, Lowe informed the county attorney of his findings. The county attorney contacted the attorney general's office, which began an investigation. After the investigation was underway, Fernandez tendered a money order to the County to reimburse the County for his use of the credit. The County, however, did not accept the reimbursement.

Fernandez was indicted on three counts: theft by a public servant, abuse of official capacity, and misapplication of fiduciary property. Fernandez pleaded not guilty to all counts. At trial, the State's theory was that Fernandez committed an offense when he used the credit from the cancelled San Antonio-Orlando tickets to purchase the San Antonio-Phoenix tickets. The parties entered into a written stipulation of evidence that provided, among other things, that the original tickets were nonrefundable and nontransferable, that the original tickets were issued in Fernandez's name and any credit remaining on the tickets could not in any way be refunded to the County or used by the County, and that the credit had an expiration date of February 5, 2013. The written stipulation was admitted into evidence. Various witnesses also testified at trial, including Mojica, Lowe, and Fernandez's son.

The jury found Fernandez guilty of theft by a public servant, a Class B misdemeanor. The trial court sentenced Fernandez to ninety days confinement in the county jail. The sentence was suspended and Fernandez was placed on community supervision for ninety days. Fernandez was also ordered to pay restitution in the amount of $381.60. Fernandez appealed.

## STANDARD OF REVIEW

In reviewing the sufficiency of the evidence to support a conviction, we review all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We also defer to the trier of fact's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## DISCUSSION

Fernandez challenges the sufficiency of the evidence to support three elements of the offense of theft by a public servant: (1) that the County was the owner of the credit; (2) that Fernandez intended to deprive the county of property; and (3) that Fernandez acted with deception when he used the credit.

As a threshold matter, Fernandez contends that it was unclear from the indictment what property was unlawfully appropriated.[1] For this reason, Fernandez explains that the first four issues

---

[1]The relevant portion of the indictment states:

> On or about the 8th day of August, 2012, and before the presentment of this indictment, James Fernandez, in Val [V]erde County, Texas, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over property, to-wit: a plane ticket, of the value of $50 or more but less than $500, from Frank Lowe, on behalf of Val Verde County, Texas, the owner thereof, without the effective consent of the owner, namely by deception, and with the intent to deprive the owner of

presented in his brief assume that the unlawfully appropriated property was the credit issued by Southwest Airlines for the cancelled Orlando trip, and the last three issues assume that the appropriated property was the tickets issued for travel to and from Orlando. The State counters that Fernandez's briefing "needlessly confuses the property at issue" in this case. According to the State, its theory was that "[o]n or about August 8, 2012, Fernandez unlawfully appropriated the credit for a ticket [] in his name (that can only be used for county business) into a plane ticket to go to Arizona for personal reasons." The State further argues that the evidence was sufficient to support the jury's verdict.

### *Owner of the Credit/Unlawful Appropriation*

In his first and second issues, Fernandez argues the County had abandoned its interest in the Southwest-issued credit and therefore the evidence was insufficient to show that the County was the owner of the credit and that he unlawfully appropriated the credit. The Texas Penal Code provides that a person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West 2014). Appropriation of property is unlawful if it is without the owner's effective consent. *Id*. § 31.03(b). "Appropriate" is defined as "to acquire or otherwise exercise control over property other than real property." *Id*. 31.01(4)(B).

The Texas Penal Code defines "owner" as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PEN. CODE ANN. § 1.07(a)(35)(A) (West Supp. 2014). It further defines "possession" as "actual care, custody, control, or management." TEX. PENAL CODE ANN.

---

the property, and the defendant was then and there a public servant, namely, a Justice of the Peace of Val Verde County, Texas, and such property appropriated by the defendant had therefore come into his custody, possession or control by virtue of his status as a public servant[.]

§ 1.07(a)(39). In defining the word "owner" as it did, the Legislature clearly gave the word an expansive meaning. *Freeman v. State*, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986). "The issue of 'ownership' goes to the scope of the property interest protected by the law and is intended to protect all ownership interests in property from criminal behavior." *Id.*

An individual may abandon his personal property. *Ingram v. State*, 261 S.W.3d 749, 753 (Tex. App.—Tyler 2008, no pet.) (citing *Worsham v. State*, 120 S.W. 439, 443 (1909)). "Abandon" means "a giving up," "a total desertion," or "an absolute relinquishment." *Id.* "Abandonment includes both the intention to forsake and the act by which such intention is carried into effect." *Id.* Thus, it is possible to take possession of abandoned property without committing a theft or intending to commit a theft. *Id.*

Fernandez asserts that the County was not the owner of the credit because it had abandoned its interest in the credit. In support of his argument, Fernandez emphasizes that the credit was in his name and could not be used by anyone else; County policy favored the purchase of nontransferable/nonrefundable tickets; when nontransferable/nonrefundable tickets went unused, the funds used to purchase those tickets were lost by the County; and the County had no specific policy asserting its ownership over credits for unused tickets. The State argues these facts are not determinative, pointing out that the credit had a value of $381.60 until February 5, 2013, and that at the time Fernandez used the credit, there were about six months remaining before the credit expired. The State also points out that Fernandez could have used the credit for county-approved business travel prior to February 5, 2013.

Viewed in the light most favorable to the verdict, the evidence showed that the source of the credit was the purchase of airline tickets with county funds for the purpose of county business. The County's personnel manual provided: "Personal use of county vehicles, equipment, supplies, tools, and any other [c]ounty property shall not be permitted." Thus, the personnel manual

prohibited the personal use of county property. The law provides that anyone who had a greater right to possess, control, or manage the credit than Fernandez could be the "owner" of the credit. *See* TEX. PEN. CODE ANN. § 1.07(a)(35)(A), (39). We conclude a rational trier of fact could have found that the County had not abandoned its interest in the credit, and that the County had a greater right to possess, control, or manage the credit than Fernandez. We further conclude a rational trier of fact could have found that the County was the owner of the credit and that Fernandez unlawfully appropriated the credit.

### Intent to Deprive

In his third issue, Fernandez argues the evidence was insufficient because the State failed to produce any evidence that he intended to deprive the County of its property when he used the credit. "A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property." *Byrd v. State*, 336 S.W.3d 242, 250 (Tex. Crim. App. 2011); *see* TEX. PENAL CODE ANN. § 31.03(a). "Deprive" means "to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner" or "to dispose of property in a manner that makes recovery of the property by the owner unlikely." TEX. PENAL CODE ANN. § 31.01(2)(A,)(C) (West 2014). Intent to deprive is determined from the words and acts of the accused. *King v. State*, 174 S.W.3d 796, 810 (Tex. App.—Corpus Christi 2005, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)). In determining whether the accused had the requisite intent to commit theft, the fact finder may consider whether the accused experienced personal gain from the property obtained. *Christensen v. State*, 240 S.W.3d 25, 32 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Viewed in the light most favorable to the verdict, the evidence showed that Fernandez used the credit to purchase tickets to take a trip for personal reasons. When Fernandez used the credit to purchase the San Antonio-Phoenix tickets, the County was permanently deprived of the ability

to have Fernandez use the credit for county business. Fernandez experienced a personal gain from the use of the credit because he did not have to pay for a portion of the tickets with his own funds. The evidence also showed that Fernandez did not seek permission to use the credit or notify the County of his use of the credit. Nor did Fernandez reimburse the County for his use of the credit upon his return. It was not until Fernandez learned of the investigation into the matter that he attempted to reimburse the County. We conclude a rational trier of fact could have found that Fernandez intended to deprive the County of its property when he used the credit.

### *Deception*

In his fourth issue, Fernandez argues that the evidence was insufficient because the State failed to produce any evidence that, when he used the credit, he acted with deception, as alleged in the indictment and defined by section 31.01(1). If an indictment uses a statutory definition to specify how a theft was committed, the State must prove the offense as charged in the indictment. *Geick*, 349 S.W.3d at 543; *Leal v. State*, 975 S.W.2d 636, 640 (Tex. App.—San Antonio 1998, pet. ref'd). Here, the indictment alleged that Fernandez unlawfully appropriated the property "without the effective consent of the owner, namely by deception, and with the intent to deprive the owner of the property . . ." Thus, the State was required to prove deception. *See Geick*, 349 S.W.3d at 548 (holding that when the State unnecessarily pled that the theft was by deception but provided no proof of deception, the evidence was insufficient to support a conviction); *Leal*, 975 S.W.3d at 640 (holding that when the indictment alleged theft was committed by acquiring property without the effective consent of the owner "by deception," the State was required to prove this allegation).

The Texas Penal Code contains multiple definitions of the word "deception." TEX. PENAL CODE ANN. § 31.01(1) (West 2014). The definition of "deception" applicable to this case is "failing to correct a false impression of law or fact that is likely to affect the judgment of another in the

transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true." TEX. PENAL CODE ANN. § 31.01(1)(B).

Viewed in the light most favorable to the verdict, the evidence showed that Fernandez purchased nontransferable/nonrefundable airline tickets for travel to Orlando on county business. Documentation was submitted to the county auditor's office in support of this purchase. Thus, Fernandez created an impression of fact that the tickets would be used to go to Orlando on approved county business. Fernandez later caused those tickets to be cancelled, resulting in a credit. Fernandez subsequently used that credit to obtain tickets for a trip to Phoenix. Fernandez did not believe that the San Antonio-Phoenix tickets would be used for county business; rather, Fernandez knew that these tickets were for personal use. Fernandez did not inform the county auditor's office that he used the credit to obtain these tickets for his personal use, nor did he reimburse the County for the credit when he returned. In fact, Fernandez did not attempt to reimburse the County for the credit until after he learned of the investigation into the matter. Thus, Fernandez failed to correct the false impression that he previously created that the tickets would be used for county business. We conclude a rational trier of fact could have found that he acted with deception, as alleged in the indictment and defined by section 31.01(1)(B) of the Texas Penal Code.

## CONCLUSION

We have determined that the evidence was sufficient to support Fernandez's conviction based on the theory that the appropriated property was the credit issued by the airline for the San Antonio-Orlando tickets. We, therefore, we need not address Fernandez's remaining issues which are based on an alternative theory. The judgment of the trial court is AFFIRMED.

Karen Angelini, Justice

Do not publish